VanVleet-Ellis Corporation *v.* Higginbotham.

Opinion delivered December 1, 1930.

*Ward & Ward,* for appellant.

*Appellee pro se.*

Mehaffy, J. Appellant began this suit in the Clay Circuit Court against J. N. Higginbotham, alleging that it was a corporation engaged in the wholesale drug busi-

ness, and that it is the successor of Hessig-Ellis Drug Company, by reason of a merger and consolidation of Van Vleet-Mansfield Drug Company with Hessig-Ellis Drug Company; that the appellee, J. N. Higginbotham, and his son, Jewell N. Higginbotham, on March 16, 1927, up to and including April 6, 1928, were operating Higginbotham Drug Store at Bernie, Missouri. It was alleged that Higginbotham and his son were partners, and operating the business at Bernie under the firm name, and that, while they were operating said business, they purchased a large bill of merchandise from appellant; that on April 6, 1928, there was due appellant the sum of $1,537.82. An itemized statement, sworn to, was filed and made part of complaint; that on March 17, 1927, appellee executed and delivered to appellant his promissory note for $986.63 on which there had been a payment reducing the amount due on note to $604.51; that both the note and account are past due, and appellant prays judgment for $2,280.73. Appellee filed answer denying all the material allegations in the complaint. This action is against J. N. Higginbotham who it is claimed was in partnership with his son, Jewell N. Higginbotham, in the drug business. If he was a partner, he is liable. The important question in the case is whether there was a partnership. There is no dispute about the amount of the claim, and it is unnecessary to set out the evidence except that portion of it on the question of partnership.

Mr. S. E. Griffin, who was secretary and treasurer of the Hessig-Ellis Drug Company of Memphis, testified that he was in charge of the credit department. That his company never received any notice from Higginbotham and son that their partnership had been dissolved. That there was a consolidation and merger of the drug companies as above set out, and that the appellant became the owner of all accounts, notes and evidence of indebtedness due each and all the former named companies. Witness company had sold the Pollard Company for years, and they had always discounted their bills.

W. K. Love, vice president, testified that J. N. Higginbotham, Sr., came to the office in Memphis in the fall of 1924, and stated that he and his son owned the Pollard Drug Company at Pollard, Arkansas, and that they were going to open a branch drug store at Bernie, Missouri, which his son would operate, and stated that they needed fixtures, merchandise, stock, etc. "J. N. Higginbotham stated that he would go back to Pollard, talk the matter over with his son and let us know. We requested that they send us a statement. Received statement signed Pollard Drug Company, J. N. Higginbotham, showing that they were partners. Stock and fixtures were to be at Bernie, Missouri, and J. N. Higginbotham, Sr., and J. N. Higginbotham Son, were to be the owners. Both stores were to be owned by the partnership. We knew nothing of the partnership being dissolved." Witness introduced a number of letters and statement signed by J. N. Higginbotham.

J. N. Higginbotham testified his son Jewell N. Higginbotham was never a partner in the Pollard Drug Store, that he never owned any interest in it, and the witness never made a statement to any one or held out that he was a partner; that he did not say when in Memphis that he and his son were partners; did not state that he and his son were opening a store at Bernie, Missouri, as partners. Never said anything that would lead them to believe that they were partners. He told them that he was helping his son; that the business was his son's. He helped his son to start in business by giving him $1,000 in cash and became responsible for $1,500, which was paid. Did not make the statement introduced and signed J. N. Higginbotham. Did not sign it. Witness never knew the statement had been made until yesterday. Did not sign the note introduced in evidence. Did not buy any of the goods mentioned in the account and did not authorize anyone to buy them. "They never required me to make a financial statement." Witness pays cash all the time. Does not owe appellant a

cent. "Don't know why my son would say we were partners when we were not."

A. F. Grider, cashier of the bank at Pollard, testified that he was well acquainted with J. N. Higginbotham. Has known him for ten or fifteen years. He does business with witness' bank. Handles a great many checks and knows Higginbotham's signature. The $986 note is not signed by him. It is not his signature on the financial statement either. Understands J. N. Higginbotham, Sr., owns Pollard Store. Knew Jewell established a store at Bernie. Understood he owned it. Doesn't know if the father has any interest in it.

J. B. Blakemore was cashier of Bank of Pollard up to February, 1925. As cashier of the bank was familiar with Mr. Higginbotham's signature. It is not his signature on the note.

Jewell N. Higginbotham testified that he operated the store at Bernie, and his father had no interest in it. Witness executed the note sued on, and his father had nothing to do with it. He made the credit report. His father never authorized him to do it; didn't think he had any knowledge of it. The note sued on was not made for opening stock. "That note was paid and I have it. It was no partnership stock, the stock was sold through bankruptcy, and Hessig-Ellis bought it in some way." Witness wrote all the letters mentioned in the suit. His father knew nothing about them. "The store was being put up at Bernie and they asked for a credit statement of the Pollard Company and asked in their letter to give in that statement my name and my father's name. I did but failed to scratch off the partnership in the blank. I did not mean to say we were partners."

Robert E. Simpson testified that he was a brother-in-law of Jewell and learned that Jewell owned the store at Bernie.

F. L. Slaughter testified that he was a salesman for Paragould Wholesale Grocery Company and knew both Higginbothams, had never heard that the store at Bernie belonged to any one except Jewell.

Appellant insists that the cause should be reversed because one of the jurors, Mr. Aussa Aud, stated after he got into the jury room that he was a salesman for another drug company and knew all about the facts in the case being tried, and that the defendant should win, and that by reason thereof other jurors voted for the verdict for the defendant. That said juror was prejudiced in said cause and not a qualified juror, and his statements influenced the jury wrongfully. While appellant stated in its motion for new trial that the juror was asked questions for the purpose of ascertaining his qualifications, and that he answered that he knew nothing about the facts, there was no evidence on this question submitted to the court, and the record does not show anywhere that these questions were asked.

In the case of *Fones Bros. Hardware Co.* v. *Mears, ante* p. 533, we said: "It is true that the bill of exceptions does not show any questions asked, either by the court or appellant's counsel, of the jurors to ascertain whether they were related to either of the parties, and does not in fact show that Charley Slocum was a member of the jury returning the verdict, and also the bill of exceptions does not contain the so-called motion in arrest of judgment with the affidavit disclosing the relationship of the juror to the appellee, the motion and affidavit being brought up by certiorari. The majority is of the opinion that in the state of the record there was no such showing of due diligence made by the objecting party, (the objection being made to the juror after the return of the verdict for the first time) as would require the granting of the motion to refuse to enter judgment on the verdict and refusing to grant the motion for a new trial on the ground of the alleged relationship of the juror to appellee. As heretofore held, it is a matter of discretion of the trial court as to whether the verdict should be set aside when objection is made to a juror after the verdict for the first time, and the majority of the court from the state of the record is not able to say that the court abused its discretion in overruling the

motion and refusing to grant a new trial because of the alleged relationship.''

It may also be said in the instant case that the juror, Aud, did not become a member of the jury with the knowledge that he was disqualified. According to the affidavit filed with the motion for new trial, the juror discovered that he was disqualified or that he knew about the facts after the trial began and after evidence was introduced. The evidence introduced at the trial brought to his mind the facts that he already knew but which did not occur to him until after the trial began. Lawyers might and sometimes do accept a jury to try a case without asking them any questions at all as to their qualifications, and, when they do this, they cannot then, after the verdict, avail themselves of a fact that the juror did not possess the necessary qualifications. Persons, if they wish, may submit their controversy to any persons, whether qualified or not, and be bound by the verdict. The only way we could know whether the jurors were qualified as to their qualifications, would be from an examination of the record, and the record in this case does not show any examination of the jurors at all as to their qualifications. If a disqualified juror sat on a jury and the necessary questions as to his qualifications had been asked, we would have a different question, or, if the statement in the motion for new trial, when submitted to the court, had been supported by evidence of witnesses that the questions were asked and answered as alleged, the court might be authorized to set aside the verdict, but, with no showing in the record and no evidence supporting the motion for new trial, the mere statement in the motion for new trial is insufficient. The appellant does not abstract his motion for new trial and does not abstract the instructions.

It is next insisted by appellant that the case should be reversed because the court erred in permitting R. E. Simpson and others to testify as to what they had heard the Higginbothams say. After the evidence was introduced, the appellant's attorney then said: ''What does

the court say?'', and the court said: ''If that was before all this transaction came up, that is the only way he could have to get it in here''; and the appellant then said: ''Exceptions noted.'' There was no request to exclude this evidence from the consideration of the jury, and the court evidently intended to hold that the evidence of holding out as a partnership was competent, and that declarations of persons as to what they understood about it was competent, but, as we have said, even if this were error, appellant to avail himself of it should have requested that it be excluded from the consideration of the jury.

It is next insisted by appellant that the court erred in giving instructions to the jury, but the instructions are not set out, and only a part of the instruction objected to is set out. *Crosby* v. *Lucas,* 180 Ark. 277, 20 S. W. (2d) 861; *Bailey* v. *Florsheim Bros. Dry Goods Co.,* 180 Ark. 293, 21 S. W. (2d) 171; *Meyers Stores Inc.* v. *Wursburg,* 180 Ark. 532, 21 S. W. (2d) 969. The objection however, is unavailing for another reason. There was no specific objection to the instruction, and the instruction was not subject to a general objection. We think that the great preponderance of the evidence, even if the evidence objected to is excluded, is in favor of the appellee.

The judgment is affirmed.